**DAY PITNEY LLP**
1 JEFFERSON ROAD
PARSIPPANY, NJ 07054
(973) 966-6300
jscordo@daypitney.com

Attorneys For Petitioner,
Scott F. Mahoney.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| -------------------------------------------------------- X | | |
| SCOTT F. MAHONEY, | : | HONORABLE |
| | : | Civil Action No. 12- |
| Petitioner, | : | |
| | : | **PETITION** |
| v. | : | |
| | : | |
| FINANCIAL INDUSTRY REGULATORY | : | (Document Electronically Filed) |
| AUTHORITY; | : | |
| | : | |
| Respondent. | : | |
| -------------------------------------------------------- X | | |

Petitioner, Scott F. Mahoney, by his attorneys, Day Pitney LLP, hereby petitions the

Court for an Order directing the Financial Industry Regulatory Authority ("FINRA") to expunge the

Central Registration Depository ("CRD") entry on Petitioner's record related to a customer

arbitration brought by Christopher Puglisi ("Claimant") against Petitioner's then-employer,

Citigroup Global Markets Inc. ("CGMI").

84030288

## PARTIES, JURISDICTION AND VENUE

1.     For the sole purpose of obtaining expungement of one customer complaint from his CRD[1] record, as provided for in FINRA Rule 2080, Petitioner files this Petition seeking such Order.

2.     Scott F. Mahoney ("Petitioner"), is a resident of Mendham, New Jersey. He is employed as a securities broker and financial advisor by Morgan Stanley Smith Barney in Morristown, New Jersey.  Petitioner has been a registered representative with FINRA or its predecessor entity, the National Association of Securities Dealers ("NASD"),[2] since 1992 (CRD no. 2202743).  Petitioner is a licensed securities agent of 28 states, including New Jersey, where he has been licensed since 1992.

3.     Although this is not an adversarial proceeding, under FINRA Rule 2080(b), FINRA must be named as an "additional party" in this proceeding.

4.     FINRA, upon information and belief, is a quasi-public, Self-Regulatory Organization ("SRO"), that has the authority to license, discipline and suspend investment professionals, known as "registered representatives."  FINRA is registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the authority set forth in the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a *et seq.*

5.     FINRA is a registered Delaware not-for-profit corporation, with its principal place of business in Washington, D.C.

---

[1] The Central Registration Depository ("CRD") is the central licensing and registration system for the United States securities industry.  FINRA is tasked under the Exchange Act with keeping and updating this database.  According to FINRA Rule 4530(a)(1)(G) all registered representatives must report to the CRD any actions for which such representative is named as a respondent or is unnamed, but is the "subject of."

[2] In 2007, FINRA became the successor entity to NASD.

84030288

6.      The Claimant in the case that Petitioner seeks to have expunged from his record, has signed a waiver of his right to be named as a party in this proceeding and has waived service and issuance of process on him. (*See* Waiver Affidavit of Christopher Puglisi annexed hereto as Exhibit "A".)

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1337 and the Exchange Act, 15 U.S.C. § 78 *et. seq.* The Exchange Act holds that district courts "shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." Exchange Act, 15 U.S.C. § 78aa (a).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391. Additionally, the Exchange Act holds that "[a]ny suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business . . . ." Exchange Act, 15 U.S.C. § 78aa (a).

**LEGAL AUTHORITY FOR THE RELIEF SOUGHT**

9.      As an SRO, FINRA has a statutory duty to "establish and maintain a system for collecting and retaining registration information[.]" Exchange Act, 15 U.S.C. § 78o-3 (i)(1)(A). Under this authority, FINRA maintains the CRD. Most of the information from a registered representative's CRD record is publicly available on FINRA's website through the "BrokerCheck"[3] feature. These records contain, among other things, information about complaints made by customers against registered representatives and any arbitration or litigation proceedings involving the representative.

- 3 -

84030288

10.     FINRA has established a procedure for registered representatives, such as Petitioner, to obtain expungement of a record from both the CRD and BrokerCheck.  While FINRA maintains these databases, expungement of a particular record can only be accomplished by means of an Order of a court of competent jurisdiction. FINRA Rule 2080(a).  As a result, this Court has the power to expunge a CRD record.[4]

11.     In addition to FINRA Rule 2080, releases by FINRA (and it's predecessor NASD) contemplate a court's independent power to grant expungements.  In 1999, the NASD issued a moratorium on arbitrator ordered expungements, due to a concern that CRD records were actually state records.  An arbitrator's order did not have the authority to alter a state record.  In issuing the moratorium, the NASD explicitly reserved the power of a court to enter an Order for an expungement or an Order confirming an arbitration award requesting an expungement. (*See* FINRA Notice to Members, No. 99-09, pg. 47-48 (Feb. 1999).)  This moratorium was continued in NASD Rule 2130 and subsequently in the identical FINRA Rule, 2080.

12.     In a Regulatory Notice released in 2009, FINRA highlighted Rule 2080 and stated, "[t]he rule requires that a court of competent jurisdiction order or confirm all expungement directives before FINRA will expunge customer dispute information from the CRD system." (FINRA Regulatory Notice, No. 09-33, pg. 6 (June 2009).)

13.     When a registered representative is not a named as a party in an arbitration proceeding, but is considered the subject of an arbitration, as arguably was the case here, the FINRA process for obtaining an expungement is not settled.  FINRA, in direct response to

---

[3] See FINRA Rule 8312. BrokerCheck is available via the FINRA website: http://www.finra.org.
[4] *See Reinking v. Financial Industry Regulatory Authority*, 1:11-cv-00813 (W. D. Tex. Nov. 30, 2011).

84030288

situations such as the present matter, has proposed a new rule clarifying how a registered representative who was unnamed in a customer arbitration, can request expungement of his or her record in that same arbitration proceeding.[5] As of now, however, the rules are still unsettled, so a registered representative must bring a petition in a court of competent jurisdiction for an original Order expunging the record.

## THE UNDERLYING CASE

14.     Christopher Puglisi, a customer of CGMI where Petitioner was employed until June of 2008, filed a statement of claim against CGMI alleging misrepresentation by the firm regarding a series of private placement investment funds (hereinafter the *Puglisi* case).  The chief complaints asserted by Claimant were (1) misrepresentation in disclosure statements of a fund purchased by Claimant and (2) the mismanagement of that fund.  Claimant alleged damages of no less than $1,000,000, his original contribution to the fund.

15.     In the answer, CGMI denied the claims asserted and stated that the historic market collapse, and not any mismanagement or inaction by CGMI, ultimately caused Claimant's losses.

16.     A FINRA Arbitration hearing (the "Hearing") was held from October 17-21, 2011.[6]  Ultimately, a panel of three arbitrators ruled in favor of the Claimant and awarded him compensatory damages of $749,229.19, as well as nominal interest.  The award was not rendered against Petitioner nor was Petitioner asked to contribute to the award in any way.

---

[5] *See* FINRA Regulatory Notice, No. 12-18 (Apr. 2012) (The notice seeks comments on a rule proposal that would allow an unnamed registered representative to seek expungement in an arbitration proceeding.  The representative could then petition a court for an Order confirming an arbitration decision, rather than petition the court for an original Order of expungement.)

84030288

17.     Furthermore, in his statement of claim, Claimant brought no claims against Petitioner and did not name Petitioner as a party to the proceeding.

18.     Throughout the course of the Hearing, Claimant consistently stated that Petitioner was not responsible for his losses.  In answering questions regarding Claimant's interactions with Petitioner, Claimant adamantly agreed that Petitioner, "presented [Claimant] with ideas and then allowed [Claimant] to make up [his] own mind about which ones to purchase" and that Petitioner "never tried to hard sell [Claimant,]" including with the regard to the fund that was the subject of the arbitration. (*See* Hearing Transcript,[7] pp.1139-40.)  Claimant absolutely did not believe that Petitioner was attempting to mislead or take advantage of Claimant in any way.  Finally, Claimant did not believe that Petitioner had any information about the fund that he did not share with the Claimant.  (*See* Hearing Transcript, pp. 1140, ln. 9-20.)

19.     It is clear, based on the allegations and evidence adduced at the hearing, that the Claimant believed that Petitioner was simply passing on information about the fund that Petitioner had received.

20.     This is confirmed by Claimant's counsel in his closing statement: "Mr. Puglisi doesn't blame Mr. Mahoney . . . because he knows all he did was pass along what he was told by Citigroup." (Hearing Transcript, p. 1483, ln. 5-8.)

21.     Petitioner did not even charge Claimant a placement fee on this fund. (*See* Hearing Transcript, p. 1140, ln. 5-8.)

---

[6] Segments of the transcript of this hearing are annexed hereto as Exhibit "B".

[7] "Hearing Transcript" refers to the portions of the hearing transcript deemed relevant to this proceeding.

84030288

## EXPUNGEMENT IS THE APPROPRIATE REMEDY

22.     FINRA has explicitly noted that the purpose of the CRD and corresponding BrokerCheck is investor protection. (*See* FINRA Regulatory Notice, No. 08-79, pg. 2 (Dec. 2008).)

23.     When a FINRA member firm or registered representative seeks to have a CRD record expunged, FINRA reserves the right to oppose the petition in a court of competent jurisdiction.

FINRA STANDARD FOR WAIVER

24.     FINRA Rule 2080, outlines the standard by which FINRA determines whether to waive opposition to a petition seeking to confirm an arbitration award. FINRA will waive opposition in instances where there is an affirmative finding that "the registered person was not involved in the investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds." FINRA Rule 2080(b)(1)(B).

25.     Additionally, FINRA may, in its discretion, waive opposition where the expungement relief is meritorious, and the expungement will have "no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements." FINRA Rule 2080(b)(2)(B).

26.     In the present matter, it is clear that the Petitioner was not involved in the "investment-related sales practice violation." As stated above, the thrust of the *Puglisi* case was the mismanagement of a particular fund and misrepresentations made by CGMI in disclosure

- 7 -

documents. This in no way implicates Petitioner or accuses him of any wrong-doing. As a result there is no value in this information to an investor.

27.     This petition for expungement is clearly meritorious and expungement of this record would have no adverse effect on investor protection. The goals of investor protection are not served by leaving a mark on Petitioner's record concerning a case where he was accused of no wrong-doing. In fact, even the Claimant lauded Petitioner's interactions with Claimant.

28.     Petitioner has been a registered securities agent since 1992 and was the subject of only one other inquiry from a customer. (This involved a wife asking whether her husband had made withdrawals from their account. The fact that the account was a joint registration was explained to the wife and the matter was dropped). Petitioner has always acted in the best interests of his clients. Having this entry on his record only hinders his ability to practice his trade and continue to help his customers.

SEC GUIDANCE

29.     FINRA Rule 2080 (and NASD Rule 2130) presumes a subset of cases where expungement may be merited, but FINRA will not waive their participation because a case did not meet the criteria of Rule 2080. As a result, in a recent case in the Western District of Texas, the Court ruled that FINRA Rule 2080 does not purport to set out specific guidelines for a court in determining whether an order should be expunged.[8] Instead, the Court in that case looked to the SEC for guidance.

30.     In a Release analyzing the proposed NASD Rule 2130 (the precursor NASD equivalent to FINRA Rule 2080), the SEC stated, "[t]he Commission believes that the

- 8 -

84030288

proposal [of Rule 2130] strikes the appropriate balance between permitting members and associated persons to remove information from the CRD system that holds no regulatory value, while at the same time preserving information on the CRD system that is valuable to investors and regulators." (SEC Release, No. 34-48933, 68 Fed. Reg. 74667, at 75670 (Dec. 24 2003).) This release indicates that the standard for an expungement is whether the record holds "no regulatory value."

31.     No regulatory value is served by maintaining information about a claim where no allegations of wrong-doing were asserted against a registered representative, there was no finding of fault entered against him, and he in no way contributed to the arbitration award against the firm.  Here, even the Claimant explicitly stated that he did not believe that Petitioner was trying to mislead or take advantage of him in any way.

32.     The allegations against the firm in the *Puglisi* case were simply product based.  This did not involve any actions taken by Petitioner and in no way concern his ability to competently and adequately work in his clients' best interests.  Petitioner was not involved in or responsible for any of the allegedly misleading information contained in the disclosure documents for the fund.  Additionally, Petitioner had no management responsibilities or control over the fund purchased by Claimant.

33.     There can be no regulatory value in information that does not implicate the Petitioner in any wrongdoing.  Instead, Petitioner recommended products that he thought best suited his client's needs based on representations by his firm. There was never any decision establishing that Petitioner committed any conduct that would serve as the predicate for any liability.  As such, there is no continuing need for public disclosure on Petitioner's CRD record

---

[8] *See Reinking v. Financial Industry Regulatory Authority,* 1:11-cv-00813 (W. D. Tex. Nov. 30, 2011).

84030288

and BrokerCheck. Expungement will not vitiate the goal of public protection for investors. The equitable remedy of expungement is proper to protect Petitioner's good name and livelihood.

WHEREFORE, Petitioner prays that FINRA be cited to appear and answer herein with respect to expungement of the *Puglisi* case; that such case be ordered expunged by the Financial Industry Regulatory Authority ("FINRA") from Petitioner's records as a registered representative of the securities industry; that the Court enter a Final Judgment accordingly; and that the Petitioner have such other and further relief, both general and special, at law or in equity, to which he may show himself to be justly entitled.

DAY PITNEY LLP
Attorneys for Petitioner,
Scott F. Mahoney


By: _____/s/ John P. Scordo_____
        JOHN P. SCORDO

Dated: May 8, 2012

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

       I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

                                **DAY PITNEY LLP**
                                Attorneys for Petitioner
                                Scott F. Mahoney

                                By: _____
                                        JOHN P. SCORDO

Dated: May 8, 2012

84030288

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCOTT FRANK MAHONEY, | :    HONORABLE |
|         Petitioner, | :    Civil Action No. 12- |
| v. | : |
|  | :    **AFFIDAVIT OF** |
| FINANCIAL INDUSTRY REGULATORY | :    **CHRISTOPHER PUGLISI** |
| AUTHORITY, | : |
|         Defendant. | : |
|  | : |

STATE OF              )
                         ) ss:
COUNTY OF       )

    **CHRISTOPHER PUGLISI**, of full age, being duly sworn according to law, upon his oath,

deposes and says:

        1.   I am over the age of eighteen years and believe in the obligation of an oath.

        2.   I am the Claimant in an arbitration proceeding, FINRA case No. 10-00860, styled as

*Puglisi v. Citigroup Global Markets Inc.* As such I have personal knowledge of the events of that

case.

3. In such case, I did not allege any wrongful acts or omission on the part of Petitioner, Scott F. Mahoney.

4. I do not contest or oppose the effort of Petitioner Scott F. Mahoney to seek an Order granting expungement of the *Puglisi* case from Petitioner's records as a registered representative of the securities industry.

5. I waive issuance and service of process in any such legal proceeding.

CHRISTOPHER PUGLISI

Sworn and subscribed to before me
this 7th day of May , 2012.

Notary Public
Joseph T. Affli. Ho JR. ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

- 2 -

# EXHIBIT B

```
 1          international managers' research reports.
 2              Do you see that?
 3      A   That's correct.
 4      Q   Okay.  And he says:
 5              If yes, have you had time to review
 6          do you see that?
 7      A   That's correct.
 8      Q   And then he says:
 9              If no, would it be easier to have
10          Stephanie print them and bind them in a book
11          for your review?
12              Do you see that?
13      A   Okay.
14      Q   And then below that, it says:
15              If so, do you want me to go forward
16          with the any of the following.
17              And then there is a list of the
18          information below that; do you see that?
19      A   That's correct.
20      Q   Okay.  It's true that Mr. Mahoney
21          presented you with ideas and then allowed you to
22          make up your mind about which ones to purchase or
23          not purchase, correct?
24      A   Absolutely.
25      Q   Okay.  He never tried to hard sell you?
```

1    A    No, absolutely not.

2    Q    And that was true with respect to the MAT

3    transaction as well?

4    A    That's absolutely right.

5    Q    He didn't charge you placement fee on MAT?

6    A    That's what he said the other day.  He

7    originally told me that.  I was happy to hear that.

8    He told me it at the time.

9    Q    You don't think that he was in any way

10   trying to mislead you or take advantage of you?

11   A    Absolutely not.

12   Q    Can you turn to page 370.

13   A    Okay.

14   Q    And just before we ask this, just along

15   those lines you don't believe that Mr. Mahoney had

16   any information about the MAT investment that he

17   didn't share with you; is that correct?

18   A    The only thing, at that point?

19   Q    Yeah.

20   A    No.

21   Q    Okay.  Now on page 370, large cap value?

22   A    There is nothing on 70 here.

23   Q    Yes.  It looks like an e-mail sending you

24   stuff with large cap value; do you see that, if you

25   turn to the next page?

1140

R. Leonard, C.S.R., Inc.
Certified Shorthand Reporters
818.995.2449

SHEET 58  PAGE 1482

1  I said to Mr. Mahoney:
2    "Q   And would you agree with me that
3  was your understanding of what fixed income
4  alternatives were designed to do?
5    And of course he says "Yes."
6  So let's go over to page 15 now.
7    Again, this is their document, not mine.
8  "Why Use Fixed Income Alternatives:
9  Higher returns than comparable Treasury or
10  municipal bonds."
11    Now, I don't need you to -- I don't need
12  to quote a definition, you know, what comparable
13  means.  It means the same; they are comparing it to
14  Treasury or municipal bonds.
15    Now, the next page, which Mr. Hilgendorff
16  knew I was going to point out to you, is the white
17  paper, and we have been through this.  I am not
18  going to read it to you again, but I want you to
19  look at what they are saying, what Mr. Islam is
20  saying to the world about this fixed income
21  investing game that they are involved in.
22    It's very clear, and what they are doing
23  is they are saying to the brokers, in effect, look,
24  this is the strategy, this is the strategy, this is
25  what all this means.  The brokers aren't expert in
                                                    1482

PAGE 1483

1  any one specific area.  They look to the firm for
2  information.  And I submit to you that's precisely
3  what Mr. Mahoney did.
4    And Mr. Hilgendorff was correct,
5  Mr. Puglisi doesn't blame Mr. Mahoney, even though
6  he hasn't spoken to him in three 1/2 years, because
7  he knows all he did was pass along what he was told
8  by Citigroup.
9    So what this paper does -- and read the
10  highlights when you get a moment.  You will see that
11  what we are talking about on page 17 is:
12    "To better meet their objectives,"
13  meaning fixed income investors, "without
14  materially increasing the risk relative to
15  the index."
16    And we learned on the prior page, the
17  index is the Lehman Brothers Aggregate Bond index.
18  It's on the page before.  So they are not able to
19  say, well, we didn't mean that, we didn't mean the
20  Lehman Brothers index, we meant something else.
21  They meant it and they are saying "without
22  increasing the risk relative to the index."
23    But the next page is remarkable.  There is
24  a footnote at the bottom of page 1-12, and what we
25  did for you is we blew it up, we have bubbled it
                                                    1483

PAGE 1484

1  here.  But if you look in Volume one of claimants
2  notebook, you will see we blew it up at page 1-12A,
3  but look at the material part of that footnote:
4    "A number of investors are wary of
5  leverage, and associate it with increased
6  risk.  While this may be true on average,
7  the two are not necessarily linked.  In our
8  view, if used judiciously, leverage actually
9  can help investors more efficiently capture
10  return opportunities and does not
11  necessarily lead to increased risk."
12    There it is again.  This is how you pitch
13  it, folks.  We have got the secret sauce, we are the
14  smartest guys in the room, we are Citigroup, we
15  figured out how to do this, we can get you a little
16  bit higher return without increasing your risk.
17  They know who their target audience here is, and
18  they are speaking to it.
19    Let's go over to page 19.
20    This is out of their material.  What are
21  they benchmarking MAT/ASTA to, the Lehman Brothers
22  Aggregate Bond Index.  A benchmark has to be
23  associated with the product or it's meaningless.
24  They are benchmarking it to the Lehman Aggregate
25  Bond Index.
                                                    1484

PAGE 1485

1    Let's go to page 21.  Now, this is the
2  presentation in February of '08.  So this is right
3  before the whole house collapses, and
4  Mr. Famiglietti is making a presentation, that's
5  Mr. Nifoussi's boss, Frank Famiglietti.
6    And if you look at page 22, this is a
7  scatter chart, and you folks are familiar with
8  scatter charts.  It determines, it pictures where on
9  the risk scale on the return scale investments are.
10  Look where fixed income arbitrage is, look at it,
11  it's just to the right and slightly above U.S.
12  bonds.  Oh, yeah, that kind of sounds like
13  Treasuries, doesn't it.
14    Now, you know, Mr. Hilgendorff made a
15  point about how this was carried on the statement.
16  Was it carried as a muni bond?  You are right, it
17  wasn't.  It was carried as a fixed income
18  alternative.  And I don't think I have to go back
19  and read you the definition of what that means.
20    And by the way, you know, there is kind of
21  an interesting juxtaposition of numbers here that
22  always happens in these cases.  They say, well, he
23  was looking for six to eight percent tax-free;
24  that's a massive return.  You saw the bonds, the
25  muni bonds in Puglisi's portfolio.  They were
                                                    1485

Puglisi vs. Citigroup
FINRA HEARING - Day 5
October 21, 2011

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Mahoney, Scott F. | Financial Industry Regulatory Authority |

**(b)** County of Residence of First Listed Plaintiff    Morris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Telephone Number, and Email Address)*
Day Pitney LLP, 1 Jefferson Road, Parsippany, NJ 07054
(973) 966-6300
John P. Scordo

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &    Pharmaceutical    Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act |    Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine    Injury Product | | |    Corrupt Organizations |
|    (Excl. Veterans) | ☐ 345 Marine Product    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |    Liability   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| ☐ 195 Contract Product Liability |    Product Liability   ☐ 380 Other Personal | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal    Property Damage |    Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| |    Injury   ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 791 Empl. Ret. Inc. | | ☐ 895 Freedom of Information |
| |    Med. Malpractice |    Security Act | **FEDERAL TAX SUITS** |    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   ☐ 510 Motions to Vacate | |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting    Sentence | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   **Habeas Corpus:** | |    26 USC 7609 |    Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/   ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 535 Death Penalty | | |    State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | | | |
| |    Employment   ☐ 550 Civil Rights | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | |
| |    Other   ☐ 560 Civil Detainee - | ☐ 463 Habeas Corpus - | | |
| | ☐ 448 Education    Conditions of |    Alien Detainee | | |
| |    Confinement |    (Prisoner Petition) | | |
| | | ☐ 465 Other Immigration | | |
| | |    Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 USC 78 et. seq.

Brief description of cause:
Petition for expungement of an entry on the Central Registration Depository ("CRD") record

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE    DOCKET NUMBER

DATE
05/08/2012

SIGNATURE OF ATTORNEY OF RECORD
/s/ John P. Scordo

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse  (Rev. 09/11)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.        (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.CP., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to  suits under 28 U.S.C. 1331, where jurisdicti on arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of s uit cannot be determined, be sure the cause of action, in S ection VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.       Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause **Do not cite jurisdictional statutes unless diversity.**       Example:         U.S. Civil Statute: 47 USC 553
        Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.